RENDERED:  JANUARY 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0742-MR

DENNIS SULLIVAN                                                                      APPELLANT

v.
APPEAL FROM BOONE CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE JENNIFER R. DUSING, JUDGE
ACTION NO. 21-CI-00973

MELINDA SULLIVAN                                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Dennis Sullivan brings this appeal from Findings of Fact and

Conclusions of Law of the Boone Circuit Court, Family Court Division, entered

May 23, 2023, granting Melinda Sullivan's motion to enforce the parties' property

settlement and custody agreement and denying Dennis's motion to set aside the

agreement.  We affirm.

Dennis and Melinda Sullivan were married on February 17, 2007. They have two children, both being born in 2013. On August 19, 2021, Melinda filed a Petition for Legal Separation and attached thereto a Property Settlement and Custody Agreement (Settlement Agreement) executed by both parties. Pursuant to the Settlement Agreement, Dennis and Melinda agreed, *inter alia*, that Dennis was awarded the marital residence, was ordered to refinance the property within 90 days, and was to pay 50 percent of the net equity to Melinda.

On December 15, 2021, Melinda filed a motion to enforce the Settlement Agreement and to convert the case to a dissolution of marriage. Therein, Melinda asserted that Dennis had not complied with the terms of the Settlement Agreement, including the requirement that he refinance the marital residence within 90 days and pay Melinda 50 percent of the net equity.

On February 22, 2022, Dennis filed a Motion to Set Aside the Settlement Agreement as unconscionable. By agreed order entered February 28, 2022, the matter was converted from an action seeking legal separation to an action seeking dissolution of marriage. On March 2, 2022, Findings of Fact and Conclusions of Law and a Decree of Dissolution (Decree) were entered by the family court. The Decree dissolved the parties' marriage but reserved any issues regarding the Settlement Agreement for later adjudication.

The family court conducted a hearing on May 18, 2022, which was continued by the parties on multiple occasions; it was ultimately concluded on April 11, 2023. On May 23, 2023, Findings of Fact and Conclusions of Law were entered granting Melinda's motion to enforce the Settlement Agreement and denying Dennis's motion to set aside the Settlement Agreement. This appeal follows.

Dennis contends the family court erred by denying his motion to set aside the Settlement Agreement as unconscionable. More specifically, Dennis contends that the division of marital assets and the assignment of marital debt provided for in the Settlement Agreement was inequitable, manifestly unfair, or unreasonable.

Kentucky Revised Statutes (KRS) 403.180 authorizes a family court to review a separation agreement for unconscionability and provides:

> In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

KRS 403.180(2). Pursuant to KRS 403.180(2), a family court is directed to consider the parties' economic circumstances and any other relevant evidence. To support a finding of unconscionability under KRS 403.180(2), the terms of a

settlement agreement must be fundamentally unfair upon the totality of the circumstances. *Shraberg v. Shraberg*, 939 S.W.2d 330, 335 (Ky. 1997); *see also* 15 Louise E. Graham & James E. Keller, *Kentucky Practice – Legal Separation* § 9.13 (3rd ed. 2008). And, a settlement agreement will not be deemed unconscionable merely because it was a bad bargain for one of the parties. *Mays v. Mays*, 541 S.W.3d 516, 525 (Ky. App. 2018).

Our review of a family court's finding regarding unconscionability under KRS 403.180(2) is highly deferential as the family court "is in the best position to evaluate the circumstances surrounding the agreement." *Shraberg*, 939 S.W.2d at 333. As the finder of fact, the family court is also in the best position to judge the credibility of the witnesses. Kentucky Rules of Civil Procedure (CR) 52.01. And, of course, the family court's findings of fact will not be reversed unless clearly erroneous. CR 52.01. A finding of fact is clearly erroneous if not supported by substantial evidence of a probative value. *Cameron v. Cameron*, 265 S.W.3d 797, 799 (Ky. 2008).

In the case *sub judice*, the family court did not find the terms of the Settlement Agreement to be unconscionable. More particularly, the May 23, 2023, Findings of Fact and Conclusions of Law provided, in relevant part:

> 21. The evidence and testimony established that [Melinda] was ultimately awarded:

a. One-half of the net equity in the marital real estate upon Husband's refinance;

b. Her vehicle, the value of which is unknown;

c. Her retirement TSP [Thrift Savings Plan] account from her employment at the IRS. The balance of the account was $39,098 on August 10, 2021. [Melinda] testified that she had her job at the IRS and contributed to the TSP since she was eighteen years old, giving the TSP account an unknown non-marital component;

d. Her individual checking and savings accounts:
   i. Personal Checking account with Chase with a balance of $19,096 on July 19, 2021;
   ii. Personal Savings account with Chase with a balance of $307.39 on July 26, 2021; and

e. Her business checking account with Chase as of July 30, 2021[,] which had a balance of $29,956[;]
   i. [Melinda] testified that the balance in her business account regularly fluctuated due to the income and operating expenses in her real estate business and that the business expenses were paid out of that account.
   ii. [Melinda] testified that her total income for 2021 through her real estate business was $49,000.

f. All debts in her name, with a total debt amount of $65,107, which included approximately $53,000 in student loans.

22. The evidence and testimony established that [Dennis] was ultimately awarded:

a. One-half of the net equity in the marital real estate;

b. Two vehicles, the value of which are unknown;

c. His retirement and investment accounts;
   i. Fidelity account with an unknown balance[.]

1. [Dennis] did not provide statements of his account but testified the balance was approximately $15,000. [Dennis's] Loan Application signed June 9, 2021[,] showed Fidelity Retirement of $15,189.
          ii. Robinhood account with a balance of $12,791.
               1. [Melinda] provide[d] a Robinhood Statement as of July 31, 2021.
          iii. Webull account with a balance of $1,014[.]
     d. His individual checking and savings accounts:
          i. Cinfed Credit Union Checking Account with a balance of $2,446 as of July 31, 2021.
          ii. Cinfed Credit Union Savings Account with a balance of $2,256 as of July 31, 2021.
          iii. Chase Account with a balance of $324 as of July 30, 2021.
     e. All debts in his name, with a total debt amount, not including his auto loan, of $144,918, which included approximately $113,000 in student loans. [Dennis] testified the vast majority of his debt is related to his student loans.

     . . . .

10. This Court has evaluated the division of the property and debts between [Dennis] and [Melinda] to determine whether the Agreement is unconscionable or not unconscionable.

11. [Melinda's] TSP is partially non-marital in nature. [Melinda's] Business Checking Account was used for her business, into which commission from sales were deposited, and out of which all business expenses were paid, thus the account was constantly fluctuating. This account balance on one certain date should not be considered as divisible marital property but rather the account could be evaluated for purposes of determining annual income of [Melinda], which she testified was $49,000 in 2021, much lower of an income than

-6-

> [Dennis's] for the year. [Dennis] was awarded two
> vehicles with unknown value, to [Melinda's] one vehicle.
> [Dennis] and [Melinda] maintained separate finances
> throughout the marriage and incurred debt separately
> throughout the marriage. They shared marital and kid-
> related expenses and often reimbursed each other for
> their share of expenses by writing checks to each other.
> A vast majority of the debt for which [Dennis] agreed to
> be responsible was his student loans, for which he has the
> benefit of the degree. Considering all of these factors, as
> well as the total debt and assets to each party, this Court
> finds the Property Settlement and Custody Agreement is
> not unconscionable.

May 23, 2023, Findings of Fact and Conclusions of Law at 5-7 and 10-11

(citations omitted).

Based upon our review of the record, we cannot conclude that the

family court committed error by failing to find the terms of the Settlement

Agreement to be unconscionable. There is substantial evidence of a probative

value to support the family court's finding that the Settlement Agreement was not

unconscionable. The family court reviewed the specific accounts held by each

party and determined that the division was equitable. Dennis asserted that Melinda

received a disproportionate amount of cash. However, Dennis's assertion focused

primarily on Melinda's business (real estate) checking account that had a balance

of $29,956. The family court found that the testimony established the funds in the

account fluctuated regularly as income came in and expenses were paid out. As

pointed out by the Supreme Court in *Shraberg*, 939 S.W.2d at 333, the family

court is in the best position to make the conscionability analysis. And, as such the family court is given great latitude in its findings of conscionability under KRS 403.180(2). Therefore, we do not believe the family court erred by not finding the terms of the Settlement Agreement unconscionable under KRS 403.180(2).

Dennis also asserts the family court erred by failing to find the Settlement Agreement void as procured by fraud, duress, or undue influence. More particularly, Dennis contends that Melinda fraudulently induced him to sign the Settlement Agreement, which he believed was only a temporary agreement to assist Melinda in procuring a loan for a condominium. Dennis believed that the condominium was a place for Melinda to live while the couple worked out their marital issues and would later serve as an investment property. Dennis further asserts he did not believe the parties were divorcing; thus, he believed the Settlement Agreement was only temporary.

It is well-established in Kentucky that a settlement agreement procured by fraud, undue influence, or duress will be set aside. *Peterson v. Peterson*, 583 S.W.2d 707, 711 (Ky. App. 1979); *Pursley v. Pursley*, 144 S.W.3d 820, 826 (Ky. 2004). Fraud occurs where deception was "intentionally practiced to induce another" and there was a "material misrepresentation made with the knowledge that it was false and with the intent that it be acted upon." *Boatwright v. Walker*, 715 S.W.2d 237, 243 (Ky. App. 1986). And, undue influence must be

-8-

of such a force that it destroys free agency and constrains one to do that which he would have otherwise refused to do. *Mays v. Porter*, 398 S.W.3d 454, 458 (Ky. App. 2013). Duress requires a showing that "an actual or threatened violation or restraint on a man's person . . . compel[led] him to enter into a contract[.]" *Boatwright*, 715 S.W.2d at 243. A party challenging a settlement agreement carries a "definite and substantial burden." *Peterson v. Peterson*, 583 S.W.2d 707, 711 (Ky. App. 1979).

In the case *sub judice*, Dennis acknowledged at the hearing that his alleged belief that the marriage was not irretrievably broken conflicted with the terms of the Settlement Agreement he executed. Dennis further acknowledged that a month before he signed the Settlement Agreement, Melinda had communicated with him regarding the cost of obtaining a divorce and that she had told him she was in a serious relationship with another man. Melinda introduced evidence of text messages between the parties that contained the word "divorce" twenty-one times. The family court found that Melinda did not procure the agreement by fraud, undue influence, or duress. As the evidence was conflicting, the family court, as the finder of fact, was clearly in the best position to judge the credibility of the witnesses. CR 52.01. Therefore, we conclude that the family court did not commit reversible error in determining that the Settlement Agreement was not procured by fraud, duress, or undue influence.

Finally, Dennis argues that "[Melinda] violated the mandatory requirement of the Family Court Rules of [Procedure and Practice] Rule [FCRPP] [§] 2 to exchange AOC-238 disclosures. Therefore, the parties could not knowingly consent to the [Settlement] Agreement." Dennis's Brief at 12.

Initially, it must be noted that Dennis failed to raise the issue of the parties' failure to exchange disclosures to the family court; and, he has failed to identify where the disclosure issue was preserved below for appellate review. *See* Kentucky Rules of Appellate Procedure (RAP) 32(A). Nonetheless, we harbor grave doubt that even if the disclosure issue had been properly preserved that Dennis's argument would be successful on the merits. The requirement for disclosure found in FCRPP 2(3) is intended to ensure that the parties exchange financial information. In this case, although the parties did not exchange AOC-238 disclosures, the parties did exchange pertinent financial information. At the hearing, Melinda presented evidence that she sent Dennis an email a week before he signed the Settlement Agreement that included a number of documents disclosing her assets and debts. Melinda also presented a loan application completed by Dennis that disclosed his assets and debts for the purpose of refinancing of the marital residence. Dennis signed that application a few months before he signed the Settlement Agreement. Therefore, the parties had exchanged pertinent financial information before the Settlement Agreement was executed by

-10-

the parties. As such, we believe Dennis's contention that the parties could not knowingly consent to the Settlement Agreement because they had not exchanged AOC-238 Forms to be without merit and otherwise unpreserved for appellate review.

For the foregoing reasons, the judgment of the Boone Circuit Court, Family Court Division, is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Brandon N. Voelker
Covington, Kentucky

BRIEF FOR APPELLEE:

Maria K. Ante
Florence, Kentucky